1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BAYVIEW PLAZA TENANTS ASSOCIATION, an unincorporated association; WASHINGTON PLAZA TENANTS ASSOCIATION, an unincorporated association; PAT DOE 1, a resident of Bayview Plaza; PAT DOE 2, a resident of Washington Plaza; PAT DOE 3, a resident of Washington Plaza; PAT DOE 4, a resident of Bayview Plaza; PAT DOE 5, a resident of Bayview Plaza; PAUL E. WERTH, a resident of Washington Plaza,<br><br>                    Plaintiffs,<br>vs.<br><br>GENE BOUMA, in his capacity as General Partner of Washington Plaza Limited Partnership and Bayview Plaza Limited Partnership; WASHINGTON PLAZA LIMITED PARTNERSHIP, a Washington limited partnership; BAYVIEW PLAZA LIMITED PARTNERSHIP, a Washington limited partnership; DIAMOND MANAGEMENT, INC.; a Washington for-profit corporation; SONNY PURDUE, in his official capacity as the Secretary of the United States Department of Agriculture; ROGER GLENDENNING, in his official capacity as the Acting Deputy Undersecretary for Rural Development; RICH DAVIS, in his official capacity as the Acting Administrator of the Rural Housing Service; KIRK PEARSON, in his official capacity as the Rural Development State Director for Washington State;<br>                    Defendants. | No.<br><br><br><br><br>COMPLAINT |

Northwest Justice Project
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

## I.   PRELIMINARY STATEMENT

The individual plaintiffs and members of the Tenant Associations of Washington Plaza and Bayview Plaza are all very low-income elderly persons or persons with disabilities who face rent increases, displacement and possible homelessness because the owners of these developments have prepaid their deeply subsidized federal USDA Rural Development (RD) housing loans that financed the construction of both developments. The owners are now attempting to significantly increase the residents' rents in violation of the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA), the intent of which is to protect residents against rent increases and displacement when RD housing loans are prepaid. The Plaintiffs seek to enjoin the proposed rent increases that will cause their displacement and possible homelessness and to ensure that their rights under ELIHPA and the Rural Development Voucher program are properly enforced.

## II.   JURISDICTION AND VENUE

1.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1343(a) (3) and (4), and 1361, in that plaintiffs' claims arise under the Administrative Procedure Act or other federal constitutional or statutory causes of action. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C.A. § 1367(a) because they arise out of the same set of facts as plaintiffs' claims under the APA.

2.      Venue is proper pursuant to 28 U.S.C. § 1391 because at least one defendant is a resident of this district. A substantial part of the events, acts or omissions giving rise to the plaintiffs' claims occurred here.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

### III.    PARTIES

3.      Plaintiff Pat Doe 1 is a resident of Bayview Plaza. Plaintiff is proceeding under a pseudonym because s/he fears retaliation from defendant Gene Bouma for her/his participation in this lawsuit.

4.      Plaintiff Pat Doe 2 is a resident of Washington Plaza. Plaintiff is proceeding under a pseudonym because s/he fears retaliation from defendant Gene Bouma for her/his participation in this lawsuit.

5.      Plaintiff Pat Doe 3 is a resident of Washington Plaza. Plaintiff is proceeding under a pseudonym because s/he fears retaliation from defendant Gene Bouma for her/his participation in this lawsuit.

6.      Plaintiff Pat Doe 4 is a resident of Bayview Plaza. Plaintiff is proceeding under a pseudonym because s/he fears retaliation from defendant Gene Bouma for her/his participation in this lawsuit.

7.      Plaintiff Pat Doe 5 is a resident of Bayview Plaza. Plaintiff is proceeding under a pseudonym because s/he fears retaliation from defendant Gene Bouma for her/his participation in this lawsuit.

8.      Plaintiff Paul E. Werth is a resident of Washington Plaza. He is not proceeding under a pseudonym, but he fears retaliation from defendant Gene Bouma for his participation in this lawsuit.

9.      Plaintiff Washington Plaza Tenants Association is an unincorporated association of residents of Washington Plaza, which until November 2, 2017, was an RD financed Section 515 deeply subsidized development located in Ferndale, Whatcom County, Washington. The mission of the association is to educate the residents of Washington Plaza of their rights and obligations as residents of a prepaid Section 515 development and, if necessary, to enforce those rights. This

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

includes, but is not limited to, their rights and obligations to continue to reside at Washington Plaza, their rights and obligations under the Restrictive Covenant imposed by RD on the owners of Washington Plaza as part of the prepayment of the RD loan, their rights and obligation under their leases, their rights to secure RD Vouchers to remain in Washington Plaza or to move to other developments, and their rights to move to other RD financed Section 515 developments and move the Rental Assistance subsidy that they were receiving prior to the prepayment. *See* Declaration of Pat Doe 2.

10.     Plaintiff Bayview Plaza Tenants Association is an unincorporated association of residents of Bayview Plaza, which until November 2, 2017, was an RD-financed Section 515 deeply subsidized development in Blaine, Whatcom County, Washington. The mission of the association is to educate the residents of Bayview Plaza of their rights and obligations as residents of a prepaid Section 515 development and, if necessary, to enforce those rights. This includes, but is not limited to, the residents' rights and obligations to continue to reside at Bayview Plaza, their rights and obligations under the Restrictive Covenant imposed by RD on the owners of Bayview Plaza as part of their prepayment of the RD loan, their rights and obligation under their leases, their rights to secure RD Vouchers to remain in Bayview Plaza or to move to other developments, and their rights to move to other RD developments along with the Rental Assistance subsidy that they were receiving prior to the prepayment. *See* Declaration of Pat Doe 5.

11.     Defendant Sonny Purdue, the Secretary of the United States Department of Agriculture (USDA), is statutorily vested with the authority to operate the rural housing programs authorized by Title V of the Housing Act of 1949, 42 U.S.C. §§ 1471 et. seq. Defendant Purdue is sued in his official capacity.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

12.     Defendant Roger Glendenning is the Acting Deputy Undersecretary for Rural Development. The rural housing programs are administered and overseen by the RD mission area of USDA. Defendant Glendenning is sued in his official capacity.

13.     Defendant Rich Davis is the Acting Administrator of the Rural Housing Service (RHS), and is responsible for the day-to-day administration of all the USDA rural housing programs on the national level. Mr. Davis also has the title of RD Acting Administrator of Housing and Community Facilities Programs. Defendant Davis is sued in his official capacity.

14.     Defendant Kirk Pearson is the RD State Director for Washington State. He is responsible for the day-to-day administration of the RD housing programs in Washington. An RD employee under Mr. Pearson's direction and control oversees the operation of RD Multi-Family Housing Programs in Washington and is responsible for processing prepayment requests submitted from owners of RD-financed Section 515 developments in Washington. Defendant Pearson is sued in his official capacity.

15.     Defendant Gene Bouma is the managing general partner of Washington Plaza Limited Partnership, the owner of Washington Plaza, which until November 2, 2017, was an RD financed Section 515 development in Ferndale, Washington.

16.     Defendant Gene Bouma is also the managing general partner of Bayview Plaza Limited Partnership, the owner of Bayview Plaza, which, until November 2, 2017, was an RD Section 515 development in Blaine, Washington.

17.     Defendant Gene Bouma is also the registered agent and a governor of Diamond Management, Inc. a Washington for-profit corporation, which manages Washington Plaza and Bayview Plaza in Whatcom County, Washington.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

18.     Defendant Washington Plaza Apartments Limited Partnership is a Washington State limited partnership that owns and operates the Washington Plaza Apartments in Whatcom County, Washington.

19.     Defendant Bayview Plaza Apartments Limited Partnership is a Washington State limited partnership that owns and operates the Bayview Plaza Apartments in Whatcom County, Washington.

20.     Defendant Diamond Management, Inc., is a Washington State for-profit corporation, which manages Washington Plaza and Bayview Plaza in Whatcom County, Washington.

## IV.     LEGAL BACKGROUND

### A.     Statutory and Regulatory Background

21.     Section 515 Rural Development housing provides subsidized housing to low-income people in rural area of the United States. Through these subsidies, rents are made low enough for low-income people to afford to rent these units.

22.     Bayview Plaza and Washington Plaza are owned and operated by private parties, but regulated, both before and after prepayment of the RD loans, by the United States Department of Agriculture, and its Rural Development mission area.

23.     By law, residents of both developments who lived in them as of the date of prepayment, had and continue to have "good cause" protection from eviction and may continue to live in their homes after prepayment at a reduced or subsidized rent unless they materially breach the lease or otherwise become ineligible for the reduced rent or subsidy.

24.     The Emergency Low Income Housing Preservation Act of 1987, P.L. 100-242 (Feb. 5, 1988) (ELIHPA), and the 1992 amendments to that Act, which are now codified at 42 U.S.C. § 1472(c), were enacted to preserve Section 515 projects as affordable housing and to protect the

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

residents of that housing as of date of prepayment by restricting the loan prepayment rights of owners who had entered Section 515 loans before December 21, 1989.

25.     When owners prepay their RD loan, their participation in the program ends, but their obligations to the residents may extend by use restrictions imposed by RD as a condition of the prepayment.

26.     Any loan payment that retires an RD loan prior to its original maturity date is a "prepayment," (7 C.F.R. §3560.11), which may be subject to the prepayment restrictions of 42 U.S.C. § 1472(c) and RD regulations codified at 7 C.F.R. Part 3560, Subpart N.

27.     Under ELIHPA, RD must notify the residents of the development about the owner's request to prepay the loan within 30 days of receiving a complete prepayment request. 42 U.S.C. §1472(c)(3); 7 C.F.R. § 3560.654.

28.     Once a complete prepayment request has been submitted, RD has 60 days to determine the eligibility of the loan for prepayment and whether the borrower has or will comply with applicable prepayment laws and regulations. If the owner's prepayment request meets these and other requirements, RD must offer incentives to the owner to remain in the program. 42 U.S.C. § 1472(c)(4) and 7 C.F.R. § 3560.653(e).

29.     If the owner rejects the incentives, RD must determine whether the prepayment will materially affect housing opportunities of minorities in the project, on the waiting list or in the market area. 42 U.S.C. § 1472(c)(5)(G)(ii), 7 C.F.R. 3560.658(b).

30.     If RD determines that prepayment will materially affect housing opportunities of minorities, the owner must, for 180 days, offer to sell the development at its market value to a nonprofit or public agency which will maintain the development's affordability. 42 U.S.C. §§ 1472(c)(5)(A) and 1472(c)(5)(G); 7 C.F.R. § 3560.658(a), (b)(2).

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

31.     If there is no material effect on minority housing opportunities, RD must then determine if there is adequate comparable alternative affordable housing in the community to which the current residents of the development can relocate as of the date of prepayment. If adequate comparable affordable housing is available, the owner is free to prepay the loan. If RD determines that there is not adequate comparable alternative housing, the owner can only prepay the loan subject to use restrictions that protect the current residents against rent increases and displacement for as long as they choose to live in the development. 42 U.S.C. § 1472(c)(5)(G)(ii), 7 C.F.R. § 3560.658(b)(3), (4).

32.     Since 1992, RD has had authority to operate a rural voucher program. 42 U.S.C. § 1490r. However, Congress did not fund the program until Fiscal Year (FY) 2006 when it funded a voucher demonstration program through the FY Appropriations bill. P.L. No. 109-97. The program funded in 2006 was more restricted than the program authorized in 42 U.S.C. § 1490r in that it limited the use of vouchers to assist households facing displacement from the prepayment of RD Section 515 loans. Moreover, it limited the subsidy provided under the voucher program to the difference between the market rent of the prepaid unit and the amount that eligible households paid for shelter as of the date of prepayment of the Section 515 housing in which they lived. In other words, once a voucher was issued the amount received by the household would not change to reflect changes in household income or household size, or increases in rents at the apartment in which they live.

33.     Congress has continued to fund the Rural Voucher Program every year since 2006 maintaining the same general restrictions. See e.g. Pub. L. 114-113, 129 Stat. 2241, 2260 (Dec. 18, 2015)

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

## V.     FACTS

34.     Washington Plaza is a 24-unit elder housing development in Ferndale, Washington. It was constructed and financed with a direct Section 515 loan from RD in 1982. The owner made an initial investment of $40,000 in the project, and RD's loan accrued interest at 1 percent. Twenty-three of the households in the development are headed by a very low or low-income person who is 62 year of age or older or a person who has a disability

35.     Twenty-three of the households in Washington Plaza have received an RD deep subsidy called Rental Assistance until November 30, 2017. Residents who receive Rental Assistance pay about 30% of household income for shelter, which includes the cost of rent and utilities.

36.     Effective December 1, 2017, Rental Assistance for the residents of Washington Plaza will terminate because of the prepayment of the RD loan for the property.

37.     Washington Plaza has many long-term residents, including some who have lived there more than a decade, and most have lived there five to ten years. The majority of its residents are over age 62. Some are disabled. Several residents use supplemental oxygen for health conditions and about half use a wheelchair, walker, or electric scooter. All of the residents are low-income, mostly relying on Social Security or Supplemental Security Income. The local food bank recently started direct deliveries to the building because so many of its residents have health and mobility issues and are very low-income. About half the residents have a visiting caregiver come to help them with daily tasks so they can avoid institutionalization.

38.     Bayview Plaza is a 30-unit elder housing development in Blaine, Washington. It was constructed and financed with a 50-year direct Section 515 loan from RD in 1982. Twenty-nine of the households in the development are headed by a very low or low- income person who

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

is at least 62 year of age or has a disability. One unit is occupied by a person who has some management obligations.

39.     Twenty-nine of the households in Bayview Plaza have received Rental Assistance, at least until November 30, 2017. Effective December 1, 2017, Rental Assistance for the residents of Bayview Plaza will terminate because of the prepayment of the RD loan for the property.

40.     Bayview Plaza also has many long-term residents who have lived there more than a decade, and many living there for more than five years. Most are in their 60s, 70s, and 80s and live on Social Security or SSI. Several people use wheelchairs, electric scooters, or walkers. Some residents have caregivers who come in to their homes to assist them. The building is located next to the community senior center, where many of its residents go for senior meals and attend activities. At least two residents were homeless before moving in.

41.     On or about June 17, 2015, defendant Bouma applied to prepay the Section 515 loan for Bayview Plaza. On or about December 21, 2015, he contacted RD and withdrew the prepayment request. RD informed the tenants and parties requiring mandatory notice of Bouma's withdrawal of the prepayment request.

42.     On about November 19, 2015, defendant Bouma mailed to the Washington State Department of Commerce a notice of intent to prepay on the RD loan on Bayview Plaza and Washington Plaza to remove them from the RD program. Those notices did not contain the information required by RCW 59.28.060(2).

43.     On or about July 18, 2016, defendant Bouma applied to RD for permission to prepay the Section 515 loans for Washington Plaza and Bayview Plaza. The loan for Washington Plaza was scheduled to mature in 2028. The Bayview Plaza loan was not scheduled to fully mature until 2038.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

44.     On information and belief, defendant Bouma did not, after July 18, 2016 mail by regular and certified mail to public bodies adequate notice of intent to prepay containing the information required by RCW 59.28.060(2).

45.     On or about September 16, 2016, via letter, RD advised the residents of Washington Plaza and Bayview Plaza that the owners of these two developments had applied to prepay the RD loans.

46.     On or about July 20, 2017, RD completed Civil Rights Impact Analyses (CRIA) with respect to the prepayment of the Section 515 loan for both Washington Plaza and Bayview Plaza. RD must prepare a Civil Rights Impact Analysis during a Section 515 prepayment to determine if the prepayment will have an impact on housing opportunities for racial minorities.

47.     In both CRIAs, RD concluded that the prepayment of Washington Plaza and Bayview Plaza would not have an adverse disproportional impact on the housing opportunities of minorities in the development and the communities in which they are located.

48.     The CRIAs also concluded that there was insufficient affordable housing in Ferndale and Blaine to allow the residents of Washington Plaza and Bayview Plaza to relocate to other affordable housing in either community as of the date of prepayment. Accordingly, RD concluded, in accordance with 42 U.S.C. § 1472(c)(5)(G)(ii), that the prepayment of both loans would have to be subject to use restrictions that are intended to protect the residents of both developments as of the date of prepayment against rent increases and displacement from their homes for as long as they remained in the developments.

49.     Washington Plaza Limited Partnership's application to prepay the RD loan that financed Washington Plaza was approved by RD on or about August 7, 2017, subject to use restrictions intended to protect residents of the development against rent increases and displacement for as long as they remained residents of the development.

Northwest Justice Project
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

50.     Bayview Plaza Limited Partnership's application to prepay the RD loan that financed Bayview Plaza was approved by RD, on or about August 7, 2017, subject to use restrictions intended to protect residents of the development against rent increases and displacement for as long as they continued to live at the development.

51.     On or about August 30, 2017, RD invited the residents of Washington Plaza and Bayview Plaza to separate meetings at their developments on September 13, 2017, where RD informed the residents of the next steps in the prepayment process, the consequences of the prepayments and the resources available to the resident that would protect them against rent increases and displacement. RD staff used a PowerPoint presentation at both meetings.

52.     At both meetings, RD staff told residents that their rent would go up after prepayment and that they needed to apply right away for an RD voucher so that they could pay the new rent. RD staff told residents that they would need to sign a new lease in order to get a voucher.

53.     RD has an obligation to advise residents of the prepaying development with information about the comparative benefits and detriments of the RD voucher program and the use restrictions and other obligations of the prepaying owner.

54.     The information provided by RD to the residents of both Washington Plaza and Bayview Plaza was not in conformance with ELIHPA, RD regulations, or RD Handbooks. The information provided by RD staff that did not conform to ELIHPA included, but was not limited to:

   a.     An assertion that when an owner prepays the RD loan, the rent of residents of the prepaid development would increase and did not indicate that there was any limit on how much it might increase;

   b.     An assertion that the owner of the prepaid development may refuse to accept RD vouchers;

Northwest Justice Project
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

c.      Failure to inform tenants that they have a right to continue to live under their current lease and continue to pay only their current tenant contribution, and that any new lease they would be asked to sign must contain provisions continuing their RD protections and rental conditions.

55.     On information and belief, Gene Bouma received the same information from RD that the residents of the two developments received in their meeting with RD.

56.     Each of the plaintiffs or members of the plaintiff associations had a lease with the owners of Washington Plaza and Bayview Plaza. In conformance with RD regulations, the leases were for a one-year term automatically renewable for another one-year term at the termination of each year's term. The leases could only be terminated for good cause, such as a material breach of the lease, and provided the residents the right to appeal any decision made by the owner that was adverse to a resident, except decisions to terminate a lease and evict the household.

57.     On or about October 27, 2017, the managers of Washington Plaza and Bayview Plaza contacted the residents of both complexes, including plaintiffs and members of the plaintiff associations, and told them they had to sign a new lease that would be effective November 1, 2017. The managers required all residents of both complexes to execute the new lease; at least one resident was told that a refusal to sign would result in the resident's eviction. Residents were also required to sign new occupancy rules. Because RD staff had told residents they must get a voucher as soon as possible, and had told residents they must sign a new lease to get an RD voucher, and because they were afraid of losing their housing, all tenants signed the lease.

58.     Residents called RD staff to complain that they had been required to sign the new lease. RD staff informed defendant Bouma that the new lease could not be effective until Dec. 1, 2017, but told residents that it would not otherwise intervene. Shortly thereafter, the managers required that all the residents initial a modification to the lease that changed the effective date to

**Northwest Justice Project**
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

December 1, 2017. When presented with the new leases, the plaintiffs were not given a right to comment on the proposed lease nor a right to appeal the new lease or occupancy rules.

59.     On or about November 2, 2017, RD accepted payments from Mr. Bouma that paid off the balance of the RD loans for Washington Plaza and Bayview Plaza.

60.     On or about November 2, 2017, RD released its deeds of trust on Washington Plaza and Bayview Plaza. On the same day, RD also filed the Restrictive Covenant—Last Remaining Tenant (Restrictive Covenant) containing the use restrictions against both properties with the Whatcom County Recorder's Office.

61.     Gene Bouma is the general partner for limited partnerships that own two other formerly RD apartment complexes in Northwest Washington for which he previously prepaid the loan subject to RD imposing similar Restrictive Covenants containing the same use restrictions to protect existing tenants. He is the general partner for limited partnerships that own at least two other existing RD apartment buildings in Washington state.

## VI.    CLAIMS FOR RELIEF

### A.    First Claim (All Defendants): New Leases and Rent Increases at Washington Plaza and Bayview Plaza Violate ELIHPA and the RD Use Restrictions

62.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

63.     ELIHPA requires borrowers who prepay their loans subject to use restriction to "ensure that tenants of the housing … financed with the loan will not be displaced due to a change in the use of the housing, or to an increase in rental or other charges, as a result of the prepayment or refinancing." 42 U.S.C. § 1472(c)(5)(G)(ii).

64.     The Restrictive Covenants containing use restrictions executed by Mr. Bouma for both Washington Plaza and Bayview Plaza obligate him to operate both developments in compliance with 42 U.S.C. § 1485 and 7 C.F.R. § 3560, local, state and federal law, and any other

Northwest Justice Project
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

applicable regulations and amendments for the purpose of housing program eligible very low, low or moderate-income tenants.

65.     The Restrictive Covenants further require Mr. Bouma to

a.      Set rents, other charges, and conditions of occupancy in a manner to meet the  restrictions required by the Restrictive Use Covenants;

b.      Post an agency approved notice of these restrictions for the tenants, and

c.      Adhere to applicable local, state, and federal laws; and

d.      Obtain Agency concurrence for any rental procedures that deviate from those approved at the time of prepayment, prior to implementation.

66.     The Restrictive Covenant, at ¶ (4), grants RD and "program eligible tenants" the right to enforce the use restrictions, as long as the Agency has not terminated the Restrictive Use Agreement pursuant to ¶ (7) of that Agreement.

67.     RD has not terminated the Restrictive Use Agreement imposed on Washington Plaza and Bayview Plaza.

68.     Mr. Bouma has violated 42 U.S.C. § 1472(c)(5)(G)(ii)(I) and the Restrictive Covenants and RD regulations by:

a.      Requiring the Plaintiffs to execute leases that abrogate their valid preexisting leases and do not conform to RD's lease requirements set out at 7 C.F.R. § 3560.156;

b.      Increasing the rent and utility charges to the Plaintiffs without complying with RD regulations set out at 7 C.F.R. §§ 3560.201-205, 3560.662.

c.      Increasing the residents' rents and utilities and other charges to the point where residents of Washington Plaza and Bayview Plaza are threatened with displacement and homelessness as a result of the prepayment or refinancing of both developments.

Northwest Justice Project
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

69.     Failing to post an RD approved notice of the Restrictive Covenant at the developments as required by ¶ (4) of the Restrictive Use Agreements.

70.     Plaintiffs are third-party beneficiaries of the contract between RD and Defendant Bouma and are expressly granted a right of enforcement of the use restrictions contained in the Restrictive Covenant, at ¶ (4).

**B.**     **Second Claim (All Defendants): The Leases Executed by the Plaintiffs in October of 2017 Are Invalid and Unenforceable**

71.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

72.     On or about October 27, 2017, Mr. Bouma and/or his agents contacted all the residents of Washington Plaza and Bayview Plaza, including the Plaintiffs, and insisted that they execute leases that he presented to them. These leases at both properties were identical in all terms relevant to this litigation.

73.     At the time that Mr. Bouma presented the new leases to the Plaintiffs, they all had valid leases in effect that were supposed to conform to RD lease requirements and did not expire until sometime after December 1, 2017.

74.     The leases that the Plaintiffs were told to execute were in all respects inferior to the Plaintiffs' leases in effect at the time of signing in all respects. The new leases, among other provisions, increased the residents' rents and utility charges and eliminated their rights to comment on the proposed rent and utility increases, eliminated the prohibition against evictions except upon on good cause and their right to appeal adverse decisions under the RD grievance and appeals process, significantly increased late fees, and deprived tenants of their right to annual 1-year lease renewals by substituting a month-to-month renewal term. The new occupancy rules that they were required to accept were less favorable, including significantly shortening the allowed duration of guests stays.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

75.     The Plaintiffs did not receive any consideration from Mr. Bouma for executing the leases and new occupancy rules.

76.     The leases and occupancy rules presented to and executed by the Plaintiffs do not conform to RD regulations including 7 C.F.R. §§ 3560.155 to .160.

### C.     Third Claim: The Rent Increases Imposed by Mr. Bouma Violate 42 U.S.C. § 1490a(a)(3)(C)

77.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

78.     Paragraph (4) of the Use Restriction obligate Mr. Bouma to adhere to applicable Federal law.

79.     42 U.S.C. § 1490a(a)(3)(C) is by its terms applicable to the Section 515 rental housing program and, by virtue of Paragraph (1) of the recorded Restrictive Use Covenant executed by Mr. Bouma and applicable to Washington Plaza and Bayview Plaza.

80.     42 U.S.C. § 1490a(a)(3)(C) precludes the owner of a section 515 development from increasing the rent in any Section 515 development by more than 10 per cent per annum during any 12-month period. The rent increases imposed on the Plaintiffs violate Section 42 U.S.C. § 1490a(a)(3)(C).

### D.     Fourth Claim (Federal Defendants): The Conditions Under Which the Prepayment of Washington Plaza and Bayview Plaza Loans were approved Violate ELIHPA, RD Regulations and Handbook and the Use Restrictions Imposed on the Developments

81.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

82.     ELIHPA authorizes RD to approve an owner's request to prepay a Section 515 loan subject to use restrictions if the prepayment does not have a material impact on minority housing opportunities. 42 U.S.C § 1472(c)(5)(G)(ii). These use restrictions are intended to protect all

Northwest Justice Project
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

residents living in a prepaid development as of the date of prepayment from rent increases and displacement by requiring the owner to continue to operate the development as a Section 515 development as long as the residents of the development as of the date prepayment live in the prepaid development. The use restrictions require the owners to:

a.     Continue to honor and renew the leases that were in effect at the time the development was operating as Section 515 development;

b.     Maintain the residents' rent contribution at the level that it was prior to prepayment and only adjust that contribution when a resident's household income increases or decreases or the household size increases or decreases;

c.     Continue to honor the residents' utility allowance if such an allowance was included in households' shelter costs;

d.     Continue to honor all resident rights that are set out in RD regulations including but not limited to the right not to be evicted except for good cause, the right to appeal adverse decisions in accordance with the RD grievance procedure and the right to notice and comment to proposed rent increases and changes in the lease or occupancy rules.

83.     In approving the prepayments of Washington Plaza and Bayview Plaza, RD has violated 5 U.S.C. § 706(1) and (2) by:

a.     Advising the owners and residents of both developments that the owner may upon prepayment raise rents to the developments' basic rent and that basic rents will rise in the future;

b.     Allowing the owners to terminate existing leases and requiring the Plaintiffs to sign new leases that raise resident's rents, utility costs and late fees, and do not maintain resident protections accorded to residents of Section 515 housing;

COMPLAINT - 18 OF 26
NO.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

c.   Requiring the release of the owner from obligations under the Restrictive Covenant when financial assistance to residents is terminated for reasons outside the owner's control.

d.   Requring residents who move into a development after a prepayment application has been filed to pay the full market rent on their apartment after the prepayment is accepted.

84.   RD's actions approving the prepayment constitutes final agency action.

**E.   Fifth Claim (Federal Defendants): Violation of Residents' Due Process Rights**

85.   Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

86.   USDA regulations, promulgated under authorities set out at 42 U.S.C. § 1480(g) and 7 U.S.C. § 6991 et seq. grant participants who receive financial assistance or other benefit from any RD programs the right to appeal any agency decision by which they are affected to a hearing officer of the Department's National Appeals Division (NAD). 7 C.F.R. §§ 11.1, 11.2 and 11.3.

87.   When an owner of a Section 515 development prepays a loan, RD subsidies, including Rental Assistance and Interest Credit terminate as does RD's regular supervision and monitoring of most of the owner's actions, including compliance with the owner's obligation to affirmatively further fair housing, approval of all rent increases, the maintenance of the development, the content of leases, the term of leases, and the basis upon which a lease may be terminated.

88.   42 U.S.C. § 1480(g), 7 U.S.C. § 6991, and USDA regulations published at 7 C.F.R. Part 11 A require RD to give persons, including tenants whose assistance is denied, reduced or

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

terminated, written notice of the reasons for the denial, reduction or termination of assistance and must provide them the right to appeal the adverse decisions made by agency staff to NAD.

89.     None of the individual plaintiffs has received notice from RD stating the specific reasons why the agency has approved the owner's request to prepay the loan or advising the residents of their right to appeal the decision to the NAD.

90.     Federal defendants' failure to advise the residents of the reasons RD approved the Washington Plaza's and Bayview Plaza's prepayments, their failure to explain the exact conditions that the owners of those developments must continue to operate the developments under the recorded use restrictions and their failure to extend them the right to appeal that decision to a NAD hearing officer violates plaintiffs' constitutional, statutory, and regulatory due process rights. Federal defendants' actions are contrary to law, and must be set aside in accordance with 5 U.S.C. § 706.

F.     **Sixth Claim for Relief (Federal Defendants): The RD Regulation Requiring A Household Member to Transfer and Use Its Rental Assistance within Four Months is Arbitrary and Capricious as Applied to the Plaintiffs**

91.     7 C.F.R. § 3560.259(c) requires residents of prepaid projects who seek to relocate and move the Rental Assistance subsidy that they were receiving to another RD development to complete the transfer of the Rental Assistance within four months of prepayment.

92.     This provision is arbitrary and capricious and in violations of 5 U.S.C. § 702 because residents' leases at the prepaying project may extend beyond four months and vacancies at other RD developments are infrequent and cannot accommodate persons from a prepaying project, particularly when more than one resident moves from a prepaying development within 4 months.

**G.   Seventh Claim for Relief (Federal Defendants): RD Federal Register Notices and its Administration of the Voucher Program are arbitrary and Capricious as Applied to the Plaintiffs**

93.   RD operates the Voucher program in accordance with (1) annual notices that are published in the Federal Register, most recently on May 11, 2017; and (2) a Voucher Guidebook that is available from the agency and also available on the RD's website.

94.   Various provisions of the RD Voucher Notice and Voucher Guidebook are arbitrary and capricious and violate the Administrative Procedure Act. These provisions include but are not limited:

    a.   Residents not being able to apply for vouchers until after the prepayment has been made;

    b.   The requirement that residents applying for vouchers do so within 10 months of the prepayment;

    c.   RD granting itself 90 days after a voucher application is filed to advise the applicant regarding vouched eligibility;

    d.   Restricting retroactive voucher payments to 60-days after a housing assistance payment contract is entered into;

    e.   Issuing vouchers to only one adult member of the household and allowing that household member to relocate and take the voucher to other housing without regard of the remaining household members;

    f.   Limiting the rights of voucher holders to transfer vouchers to other household members.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

**H.** **Eighth Claim for Relief: RD Regulations and Policies Regarding LOPEs Are Conflicted and Violated 42 U.S.C. § 1471(g)**

95.     RD regulations regarding the issuance and priority of its Letters of Priority Entitlement (LOPEs) state that a person receiving a LOPE only has admission priority to other RD developments over other applicants in the same income group as the displaced resident.

96.     RD handbook and letter advising displaced residents of the availability of LOPEs grants displaced residents the highest admissions priority to any other RD development.

97.     The RD regulation providing displaced households a limited priority to other RD developments violates the National Housing Goals, 42 U.S.C. § 1441 and 42 U.S.C. § 1471(g).

**I.** **Ninth Claim for Relief (State Defendants): Violation of Washington Notice of Prepayment Statute**

98.     Washington law requires landlords of federally assisted housing to provide residents of the housing, as well as various public bodies, twelve months' written notice of the anticipated expiration of any rental subsidies or prepayment of the loan. RCW 59.28.040. That notice must contain certain specified kinds of information. RCW 59.28.060.

99.     Defendants Bouma, Bayview Plaza, and Washington Plaza failed to adequately notify tenants of the effect of prepayment on their rents and other terms of their rental agreement as required under RCW 59.28.040, .060.

100.     Defendants Bouma, Bayview Plaza, and Washington Plaza did not satisfy the notice requirements for the public bodies required to be notified of their intent to prepay the RD loan on Bayview Plaza Apartments and Washington Plaza Apartments and to terminate the Rental Assistance subsidies that the residents were receiving, and the effect of prepayment on the rents of affected tenants, and thereby have violated RCW 59.28.040 and .060.

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

1

2

### J. Tenth Claim for Relief (State Defendants): Violation of Washington State Residential Landlord Tenant Act

3

4

5

6

101.     The Washington Residential Landlord Tenant Act (RLTA) requires landlords to maintain plumbing in reasonably good working order. RCW 59.18.060(8). Mr. Bouma required the Plaintiffs to sign new leases that unlawfully require the residents at their own expense to keep plumbing fixtures in good repair. ¶16, Dec. 1, 2017 Rental Agreement.

7

8

9

10

102.     The RLTA does not allow the landlord to make the tenant responsible for reasonable wear and tear. RCW 59.18.130(10). Mr. Bouma required the Plaintiffs to sign new leases that unlawfully require the residents to clean carpets and window coverings to professional standard at least annually. ¶16(a) , Dec. 1, 2017 Rental Agreement.

11

12

13

14

15

103.     The RLTA does not allow landlords to charge attorney fees except as specifically authorized in that chapter. RCW 59.18.230(2)(c). Mr. Bouma required the Plaintiffs to sign new leases that make residents liable to the landlord for any attorneys' fees which in any way relate to or were precipitated by a breach of the rental agreement by residents, ¶11 , Dec. 1, 2017 Rental Agreement. This fee provision is not authorized by the RLTA, so violates RCW 59.18.230(2)(c).

16

17

18

19

20

104.     Mr. Bouma violated his obligation of good faith under the RLTA by demanding that all residents sign a new lease and occupancy rules with dramatically higher rent and late fees, multiple less favorable terms, and provisions violating the RLTA as to maintenance, cleaning, and attorney fees despite the tenants having valid existing annual leases and occupancy rules. RCW 59.18.020.

21

22

23

105.     This Court has supplemental jurisdiction to hear this claim because it arises out of the same set of facts that provide a basis for relief under Plaintiffs other claims.

24

## VII.   PRAYER FOR RELIEF

Plaintiffs request the following relief:

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

1      1.      That plaintiffs be allowed to proceed anonymously to prevent retaliation against them by state defendants;

2.      An Injunction prohibiting the Washington Plaza and Bayview Plaza Limited Partnerships from raising the rents or utility charges of the residents of Washington Plaza and the Bayview Plaza;

3.      A declaration that the leases and occupancy rules executed by the residents of Washington Plaza and Bayview Plaza in October of 2017 are void and that the leases and occupancy rules that were in effect prior to October 2017 continue to be in effect and subject to renewal as provided in the leases or RD regulations;

4.      Requiring RD to hold a residents meeting advising them of the owner's obligations under the Restrictive Covenant including the owner's obligation to maintain residents' rent at their prepayment level and to only adjust rents in response to changes in household income and size;

5.      A declaration that regulations authorizing federal defendants to release owners from their obligation to comply with the Restrictive Covenant imposed on their prepaid development when financial assistance to residents is terminated for reasons outside the owner's control are contrary to ELIHPA;

6.      A declaration that the following RD policies are arbitrary and capricious and the regulations and notice that authorize these policies must be enjoined until RD publishes new regulations and Federal Register Notices that are not arbitrary and capricious:

      a.      Precluding residents from submitting voucher applications to RD until after a prepayment has been completed;

      b.      Giving RD up to 90 days to issue a voucher after an application for a voucher has been filed;

Northwest Justice Project
1814 Cornwall Ave.
Bellingham, Washington 98225
Phone: (360) 734-8680 Fax: (360) 734-0121

c.      Limiting to 10 months the period by which a resident must apply for a voucher;

d.      Issuing vouchers to only one household member and granting that household member exclusive rights to control the voucher.

e.      Limiting the transfer of vouchers between household members.

f.      Limiting to 60 days the period that RD can issue retroactive payments under a HAP contract;

g.      Limiting to 4 months the period that tenants can transfer their RD Rental Assistance to another RD project.

7.      A declaration that RD need not issue vouchers to residents of Section 515 developments that are being prepaid subject to use restrictions unless the residents plan to move to other private housing.

8.      Require RD to change its regulation regarding LOPEs to provide displaced residents the highest admission priority to other RD developments.

9.      Award of Plaintiffs' costs and reasonable attorney fees; and

10.     Such other and further legal and equitable relief as this Court deems just and proper

**Northwest Justice Project**
**1814 Cornwall Ave.**
**Bellingham, Washington 98225**
**Phone: (360) 734-8680 Fax: (360) 734-0121**

1   DATED this 27th day of November 2017.

2

3   **NORTHWEST JUSTICE PROJECT**                    **NATIONAL HOUSING LAW PROJECT**

4   /s/Kelly Owen                                    /s/Gideon Anders
    Kelly Owen, WSBA #16599                          Gideon Anders, California Bar #86872
5   kellyo@nwjustice.org                             ganders@nhlp.org
                                                     *Pro Hac Vice Application Pending*
6   /s/Josefina Cerrillo-Ramirez
    Josefina Cerrillo-Ramirez, WSBA #31134           703 Market Street, Suite 2000
7   josefinar@nwjustice.org                          San Francisco, CA 94103
                                                     415-546-7000 ext. 3103
8   /s/Charles Silverman
    Charles Silverman, WSBA #8654                    /s/Jessica Cassella
9   charless@nwjustice.org                           Jessica Cassella, California Bar #306875
                                                     jcassella@nhlp.org
10  1814 Cornwall Ave.                               *Pro Hac Vice Application Pending*
    Bellingham, WA 98225
11  360-734-8680                                     1025 Vermont Avenue NW #606
                                                     Washington, DC 20005
12  /s/Scott Crain                                   415-546-7000
    Scott Crain, WSBA #37224
13  Scottc@nwjustuice.org

14  401 Second Ave. S #407
    Seattle, WA 98104
15  206-707-0900

16

17

18

19

20

21

22

23

24